COPPER VALLEY TRADING COMPANY, John Chapman and Jean Chapman, Appellants,

v.

Alvan H. KRATZ, and Caye Kratz, Appellees.

No. 1714.

Supreme Court of Alaska.

Sept. 12, 1973.

M. Ashley Dickerson and Sylvia L. Short, Dickerson & Short, Inc., for appellants.

Marshall K. Coryell, Anchorage, for appellees.

Before RABINOWITZ, Chief Justice, and CONNOR, ERWIN and BOOCHEVER, Justices.

OPINION

CONNOR, Justice.

This case comes to us on appeal from the superior court, from dismissal of the complaint for lack of equity jurisdiction.

The pertinent facts are as follows. On May 13, 1970, Copper Valley Trading Company through its then president, Merle K. Smith, entered into a "Real Estate Contract" with Alvan H. Kratz and his wife, Caye Kratz. The Kratzes were to purchase certain land located in Chitina township, the hotel and bar buildings located thereon (popularly known as the Chitina Hotel and the Chitina Bar), and the incidental furniture, fixtures, and contents of the buildings.

The contract stated a purchase price of $25,000, acknowledged receipt of a $400 down payment, and anticipated receipt of an additional $4,600 payment by May 15, 1970. The balance of the $20,000 plus interest at 6% per annum on the unpaid portion was to be remitted in 60 monthly installments of $386.70, the first payment due on May 1, 1971.

On September 8, 1971, Copper Valley—through a new president, John Chapman, and its secretary-treasurer, Jean Chapman—sent the Kratzes[1] a document entitled "Notice of Termination of Contract." The notice alleged seven specifications of default, all of which were failures to make certain payments required by the contract.

Foreclosure proceedings were subsequently instituted on October 18, 1971.

On or about October 14, 1971, shortly before the complaint was filed, Mrs. Kratz conferred with Mr. James Doogan of the State Alcoholic Beverage Control Board.[2] She informed him that she was buying the Chitina Hotel and Bar and that she was operating the bar. He told her that unless she could get a management agreement with Copper Valley to operate the bar on its behalf or get her name placed on the license [3] that she would have to stop operating the bar. Mrs. Kratz closed the bar on October 15, 1971.

Following intensive pretrial negotiations, the case came before the superior court for the third judicial district on November 23, 1971. On March 1, 1972, the trial judge ruled that the agreement between Copper Valley and Mrs. Kratz to transfer the Chitina Bar was void *ab initio*, illegal, and therefore could not be the basis for "an equitable action." [4] The appropriate action, he opined, would be "[o]n a common count for money had and received, which is actually an action at law for restitution, although restitution is normally considered an equitable remedy." Accordingly, on March 31, 1972, he signed a formal order dismissing the complaint for lack of equity jurisdiction.[5]

---

1. Mr. Kratz deserted his wife on or about June 1, 1971, right after a buffalo hunt. Apparently he took the books of both the bar and the hotel with him when he left, leaving her with the unpleasant task of having to reconstruct them. Mr. Kratz did not appear at trial.

2. Although the contract had been in effect for nearly a year and a half, October, 1971, presented the first occasion for Mrs. Kratz to seek clarification from the ABCB. The contract was entered subject to an outstanding lease in favor of James and Rita Hatch, and Mrs. Kratz apparently did not take physical occupancy until approximately October 1, 1971.

3. The license is presently issued to the Copper Valley Trading Co. doing business as the Chitina Bar.

4. The basis for the court's decision was his finding that the provisions of the contract which called for Mrs. Kratz to operate the bar business while the liquor license remained in Copper Valley's name, until Mrs. Kratz had finished paying for the business, constituted a violation of AS 04.10.180. That statute prohibits persons other than the licensee from having a "direct or indirect financial interest in the business for which the [liquor] license is issued." We expressly do not pass upon the correctness of the court's interpretation of that statute at this time.

5. The elan with which the lower court handled the matter has not escaped our attention:

"MRS. DICKERSON: Are you granting him the right then to amend?

"THE COURT: No.

■ We think the lower court erred in thus dismissing the complaint. Alaska Civil Rule 2 provides that,

"There shall be one form of action to be known as a 'civil action.'"

1 Barron & Holtzoff, Federal Practice and Procedure § 141 at 614–17, 621–22 (1960) provides the following illuminating commentary on Civil Rule 2:[6]

"The rule prescribing one form of action has been accurately characterized as the most fundamental rule of all. The forms of action are abolished, the separate equity practice of the federal courts is eliminated, the old equity rules are superseded . . . .[7]

". . . [T]he merger of law and equity and the abolition of the forms of action supplies one uniform procedure by which a litigant may present his claim in an orderly manner to a court empowered to give him whatever relief is appropriate and just; the substantive principles which applied previously are not changed, and it remains for the court to decide, in accordance with these principles, what form of relief is appropriate and just on the particular facts proven. . . .[8]

. . . . . .

"From time to time cases may arise in which . . . equity jurisdiction may be challenged because of the existence of an adequate legal remedy. Since, however, the same court administers equitable and legal relief, the objection serves no purpose unless the posture of the case excludes . . . jurisdiction of the subject matter, i. e., lack of power to administer any relief whatever. Likewise rules for dismissal or transfer of a case brought on the wrong side of the court are no longer effective . . . .". (Footnotes omitted.)[9]

■ Appellees suggest that the trial court, after having decided that the agreement was void *ab initio,* could then have proceeded with the matter of restitution, if any, between the parties. In light of the Barron & Holtzoff commentary, we consider this to be an eminently sensible suggestion. The trial court may allow under Alaska Civil Rule 15(a) whatever amendments may be necessary to rectify any deficiency in the pleadings.

Remanded for further proceedings consistent with this opinion.

FITZGERALD, J., not participating.

"MRS. DICKERSON: No.
"THE COURT: I'm not considering his motion for rescission, I'm simply dismissing your complaint.
"MRS. DICKERSON: Because that's definitely lacking in equity too, if any of our dealings (indiscernible) . . . .
"THE COURT: I'm throwing you out of court and I'm saying come back into—well, everybody's out.
"MRS. DICKERSON: Well, throw him out too, just throw us both out together. Good enough, we don't mind.

"THE COURT: The action's dismissed, the counterclaims are dismissed, everything is dismissed, everyone is out of court.
"MRS. DICKERSON: Good enough."

6. Alaska Civil Rule 2 is identical to Rule 2 of the Federal Rules of Civil Procedure.

7. *Compare* 4 Wright and Miller, Federal Practice and Procedure § 1042 at 142–44 (1969).

8. *See also id.*

9. *See also id.*