Joseph SHOOSHANIAN and Lucille
Shooshanian, Husband and Wife,
d/b/a A To Z Co., Appellants,

v.

Dennis E. WAGNER, Borden, Inc., a Cor-
poration, and Thermal Efficiency, Inc.,
a Washington Corporation, Appellees.

BORDEN, INC., a Corporation,
Cross-Appellant,

v.

Joseph SHOOSHANIAN and Lucille
Shooshanian, Husband and Wife,
Cross-Appellees.

Nos. 6841, 6874.

Supreme Court of Alaska.

Oct. 28, 1983.

Peter W. Giannini, Giannini & Associates, Anchorage, for appellants/cross-appellees.

Peter J. Maassen, Burr, Pease & Kurtz, Anchorage, and Michael W. Davis, Sidley & Austin, Chicago, Ill., for appellee/cross-appellant Borden.

Nicholas C. Newman, Lee, Smart, Cook, Martin & Patterson, P.S., Inc., Anchorage, for appellee Thermal Efficiency, Inc.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and DIMOND, Senior Justice.[*]

## OPINION

DIMOND, Senior Justice.

This is an appeal of the superior court's order dismissing the Shooshanians' suit with prejudice for failure to state a claim upon which relief can be granted. We reverse the superior court's decision.

[*] Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 11, of the Constitution of Alaska.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1977, appellants Joseph and Lucille Shooshanian began constructing a building to house their retail electronics supplies store and repair shop, with a second story designed as a residence for the couple. The original general contractor hired Dennis Wagner to insulate the building. After discussing the matter with Wagner, the Shooshanians agreed to use urea formaldehyde foam insulation or "Insulspray." Although it had not yet been completed, the Shooshanians moved into the new building in December 1977, shortly after the insulation had been applied and the covering walls were installed.

In September 1978, the Shooshanians filed a complaint in the superior court, alleging that Insulspray gave off "noxious and malodorous fumes" that caused allergenic reactions and created a health hazard. In addition, they claimed that the fumes had driven away customers, and that the value of the building itself was reduced to almost nothing.

The complaint named Dennis Wagner and Borden, Inc. ("Borden") as defendants, alleging that Wagner had installed insulation obtained from manufacturer Borden or its affiliate. Several months later Borden was served with a summons and complaint at its principal place of business in Ohio. Shortly thereafter, Borden removed the case to federal district court where it filed its answer asserting that the complaint failed to state a claim upon which relief could be granted. Borden cross-claimed against Wagner, alleging that he failed to install the insulation in a workmanlike manner, and apparently also asserted a third party claim against Thermal Efficiency, a Washington corporation and distributor of Borden's products.

The federal district court ordered the case remanded to superior court because it lacked complete diversity jurisdiction. Several days before the scheduled trial date

Judge Moore held a conference and reviewed the four claims that the Shooshanians hoped to prove at trial: breach of express and implied warranties under the Uniform Commercial Code, strict products liability, negligence, and violation of the Alaska Unfair Trade Practices and Consumer Protection Act (AS 45.50.471 *et seq.*). At the pretrial conference Judge Moore again reviewed the case with counsel and determined that the Shooshanians had stated no claim upon which relief could be granted. On its own motion the court dismissed the case with prejudice and ordered each party to bear its own costs and attorney's fees. The order noted that all claims among the defendants had been settled. The Shooshanians subsequently filed a motion to vacate the court's order of dismissal with a motion to amend the complaint to join Thermal Efficiency as a party defendant and to file supplemental claims against both Borden and Thermal Efficiency for personal injuries suffered by the Shooshanians. The motions were denied, and this appeal followed. Borden filed a cross-appeal alleging that the superior court erred in failing to award costs to Borden.

## II. MOTIONS TO AMEND

### A. *Additional Defendant*

We agree with the superior court that the Shooshanians' motion to add Thermal Efficiency as a party defendant was properly denied. Alaska Civil Rule 15(a) requires that a party, who wishes to amend his complaint after a responsive pleading has been filed, seek leave of the court. The trial court has broad discretion to decide whether to grant leave to amend, *Wright v. Vickaryous,* 598 P.2d 490, 495 (Alaska 1979), and the supreme court will interfere with the exercise of that discretion only when it has been abused. *Merrill v. Faltin,* 430 P.2d 913, 915 (Alaska 1967).

The Shooshanians had an opportunity to join Thermal Efficiency in May 1981 when they submitted their first amended complaint. Thermal Efficiency argues that, in fact, the Shooshanians had the opportunity to amend their complaint at any time from March 1979, when Thermal Efficiency answered Borden's third-party complaint, to January 6, 1982, the final date set by the trial court for any motions to amend the pleadings to be filed. During this period of approximately thirty-two months, the Shooshanians did not take any action to discover whether they had a claim against Thermal Efficiency. Thermal Efficiency argues that, because of the Shooshanians' undue delay in moving to amend, joinder at such an advanced point in the proceedings would be prejudicial to them. The Shooshanians do not reply to these contentions.

If a party would be prejudiced by a proposed amendment, the court must apply a balancing test to decide whether the amendment should be granted, weighing the degree of prejudice to the opposing party against the hardship to the movant if the amendment is denied. *Wright v. Vickaryous,* 598 P.2d at 495 n. 13; *Merrill v. Faltin,* 430 P.2d at 915. Among the factors to be considered in evaluating prejudice to the opposing party are the added expense if the motion is granted and whether trial will be significantly more burdensome or lengthy. *Estate of Thompson v. Mercedes-Benz, Inc.,* 514 P.2d 1269, 1271 (Alaska 1973).

It is a long established maxim of equity jurisprudence that parties may not sleep upon their rights. *See, e.g., Baxter v. Redevco, Inc.,* 279 Or. 117, 566 P.2d 501, 503 (1977); *Jacobson v. Jacobson,* 557 P.2d 156, 158 (Utah 1976). The Shooshanians had ample opportunity to join Thermal Efficiency as a defendant yet did not attempt to do so until their complaint against Borden was dismissed. Although it had notice of the subject matter of the suit against Borden, Thermal Efficiency had prepared to defend as a third party and not as a principal defendant. Prior to trial, Thermal Efficiency settled its differences with Borden and thus did not intend to litigate the case. To allow joinder at this point would require additional delays and substantial expense on the part of Thermal Efficiency. This outweighs the hardship imposed on the

Shooshanians by denying their dilatory motion. We find, therefore, that the superior court did not abuse its discretion by refusing to grant the Shooshanians leave to amend their complaint.

## B. *Additional Allegations*

We further find that the trial court did not abuse its discretion by denying the Shooshanians' motion to supplement their dismissed complaint with additional allegations of personal injury. Borden and Thermal Efficiency maintain that the Shooshanians' attorney abandoned their personal injury claim in the course of opposing Borden's motion for production of income tax documents. The Shooshanians' memorandum in opposition stated that "[t]hese returns are not relevant to the case before the court, and in no way could lead to any relevant evidence. Plaintiffs' claim is not based upon wage loss or personal injury." The Shooshanians do not respond to Borden's and Thermal Efficiency's argument, but instead maintain that their supplemental complaint alleges new injuries arising since the original complaint.

■ In deciding this matter, we turn to Civil Rule 15(d), which expressly permits supplementing a complaint "even though the original pleading is defective in its statement of a claim for relief ...."[1] Thus, the failure of the Shooshanians to include personal injury claims in their original pleadings does not necessarily bar their inclusion now because Rule 15(d) specifically permits omissions in prior pleadings to be cured in this fashion. *See* 6 C. Wright & A. Miller, Federal Practice and Procedure § 1505, at 544–546 (1971).[2] Unless the trial court has abused its discretion, its decision on a Rule 15(d) motion will not be disturbed. *See Mobile Mechanical Contractors v. Carlough*, 566 F.2d 1213, 1218 (5th Cir. 1977); *Reid v. International Union of United Auto, Aerospace & Agricultural Workers*, 479 F.2d 517, 520–21 (10th Cir.1973), *cert. denied*, 414 U.S. 1076, 94 S.Ct. 592, 38 L.Ed.2d 483 (1973). 6 C. Wright & A. Miller, Federal Practice and Procedure § 1504, at 543 (1971). We must therefore decide whether the superior court abused its discretion in refusing to permit the Shooshanians to supplement their complaint.

■ Although Rule 15(d) is to be interpreted liberally, *see, e.g., Bell v. United States*, 71 F.R.D. 349, 353 (D.N.H.1976); 6 C. Wright & A. Miller, Federal Practice and Procedure § 1504, at 542 (1971); *Garrison v. Baltimore & Ohio Railroad*, 20 F.R.D. 190, 191 (W.D.Pa.1957), the deciding factors in determining whether supplementation should be allowed are whether it "will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action." *Lerman v. Chuckleberry Pub., Inc.*, 521 F.Supp. 228, 231 (S.D.N.Y.1981). *See generally Rowe v. United States Fidelity & Guaranty Co.*, 421 F.2d 937, 942–44 (4th Cir.1970); 6 C. Wright & A. Miller, Federal Practice and Procedure § 1504, at 542–43

---

1. Civil Rule 15(d) provides:

 Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.

2. *See, e.g.,* the court's observations in *Bell v. United States,* 71 F.R.D. 349, 358 (D.N.H.1976), *aff'd,* 563 F.2d 484 (1st Cir.1977):

 Even when the original complaint fails to state a claim upon which relief can be granted, 15(d) allows a court to permit the supplementary pleadings when new events have made clear plaintiff's right to relief.

 Moreover, when [a] plaintiff employs a supplemental pleading to cure a defective original pleading he is not bound by his original theory of relief, but may assert new facts in support of an entirely different legal theory or remedy.

 6 C. Wright & A. Miller, Federal Practice and Procedure § 1504, at 545 (1971).

(1971). The record in this case supports the court's decision to deny the Shooshanians' motion by showing that the Shooshanians were guilty of undue delay or laches. *See Parker v. Broadcast Music,* 30 F.R.D. 151 (S.D.N.Y.1962); *Garrison v. Baltimore & Ohio Railroad,* 20 F.R.D. 190 (W.D.Pa. 1957).[3] Specifically, the Shooshanians waited until two days after Judge Moore entered the order of dismissal to file their Rule 15(d) motion. They did not allege that they were unaware until then of information regarding their personal injuries. The course of discovery would have differed significantly had that issue been presented earlier. As it was, the Shooshanians did not schedule any physicians as trial witnesses, nor had any physical examinations been conducted. In short, the Shooshanians have failed to state one valid reason why they had no prior knowledge of their personal injuries, which were allegedly suffered as a result of the installation of the urea formaldehyde. Had the allegation of personal injury been put forward at an earlier time, Borden would have been allowed to prepare a defense in response. We believe that the superior court's denial of the motion was necessary to avoid undue prejudice toward Borden. Our liberal policy toward amending complaints and supplementing pleadings does not require the absence of all restraint. Were that the case, leave of court would not be required by Civil Rule 15(d). We conclude that the superior court did not abuse its discretion in denying the Shooshanians' motion to supplement their complaint.

## III. SCOPE OF REVIEW

■ It is clear from the order of dismissal that the superior court considered matters outside the pleadings in deciding to dismiss the Shooshanians' suit upon its own motion for failure to state a claim upon which relief could be granted. *See* Civil Rule 12(b)(6). Under the Alaska Civil Rules, the motion should have been treated as one for summary judgment.[4] *Adkins v. Nabors Alaska Drilling, Inc.,* 609 P.2d 15, 21 (Alaska 1980). The trial court's failure to treat its motion as a motion for summary judgment is error. *Martin v. Mears,* 602 P.2d 421, 426 (Alaska 1979). Upon review, we have several alternatives: (1) we may reverse and remand to the superior court for proper consideration as either a Rule 12(b)(6) motion to dismiss on the pleadings or as a motion for summary judgment; (2) we may review the trial court's decision to dismiss as though matters outside the pleadings had been excluded; or (3) we may review the court's act as if it were a grant of summary judgment. *Id.* at 427.

We decline to review the trial court's *sua sponte* dismissal as a motion for summary judgment because the Shooshanians did not have sufficient notice or an adequate opportunity to respond to it prior to dismissal. Alaska Civil Rules 77(c) and (e) provide respectively that the opposing party shall

**3.** In *Parker,* suit was filed in November 1956, and dismissed in November 1960. The order of dismissal was vacated in December 1960 on the condition that the case be ready for trial by May 1961. The case had not been calendared by February 1962, when the plaintiff moved to supplement her complaint. The motion was denied partially because the plaintiff had failed to present a single valid reason for not filing the 15(d) motion during the five years the action had been pending.

In *Garrison,* the trial court denied a motion to supplement the defendant's answer in order to add an affirmative defense of release and satisfaction. The release had been obtained ten days after the movant's answer had been filed, but the motion had not been made until the virtual eve of trial, sixteen months later. The *Garrison* court found prejudice to the plaintiff was significant in that failing to move for the supplementation precluded necessary discovery and trial preparation. The court found no merit in the defendant's contention that the delay was a justifiable oversight in the preparation of pleadings.

**4.** Alaska R.Civ.P. 12(b) provides in part:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

have fifteen days after service of a summary judgment motion to reply, and that the parties are entitled to oral argument on a summary judgment motion as a matter of right. Because Judge Moore raised the motion to dismiss at the pretrial hearing and proceeded to order the case dismissed the next day, the Shooshanians were deprived of these procedural safeguards. We shall therefore treat the superior court's dismissal as a judgment on the pleadings and confine our review to the issue of whether the Shooshanians did indeed fail to state a claim upon which relief can be granted.

■ In considering a motion to dismiss, the appropriate standard has been stated by the federal courts in applying Federal Rule of Civil Procedure 12(b)(6), a rule identical to Alaska Civil Rule 12(b)(6). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80, 84 (1957). *See generally* 2A J. Moore & J. Lucas, Moore's Federal Practice ¶ 12.08 (2d ed. 1983).[5] This court has noted that,

> [a] Civil Rule 12(b)(6) motion for dismissal which [is] grounded on the "failure to state a claim upon which relief can be granted" ... tests the legal sufficiency of the complaint's allegations. Well pleaded allegations are deemed admitted for purposes of the motion but unwarranted factual inferences and conclusions of law are not considered admitted in resolving the merits of such motions.

*Dworkin v. First National*, 444 P.2d 777, 779 (Alaska 1968) (footnote omitted). In light of this, we will assume that the factual allegations pled by the Shooshanians are true and ascertain whether or not they state a claim upon which relief may be granted.

5. In fact, granting the Rule 12(b)(6) motion would be improper if the Shooshanians' complaint states a claim upon which some relief may be granted, although the relief demanded

## IV. BREACH OF WARRANTY

### A. *Genuine Issues of Fact*

■ AS 45.02.313(1) provides that "[a]n affirmance of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." The Shooshanians allege that they relied upon the express representations of both Borden and Wagner as to the properties and characteristics of the insulation, that the insulation was defective and that its presence in their building has both reduced its value and caused them to lose customers. Borden denies these allegations. However, as noted above, for the purposes of this court's review, the allegations should be deemed admitted. The issue is thus whether or not these allegations as pleaded provide a basis for a claim upon which relief can be granted. We hold that the Shooshanians' allegations in their complaint state a claim upon which relief could be granted. Accordingly, we find the dismissal of the Shooshanians' claim for relief under AS 45.02.313(1) to be error, and we reverse.

■ To be merchantable, goods must at least "be fit for the ordinary purposes for which the goods are used." AS 45.02.314(b)(3). A warranty of merchantability is implied in a contract of sale if the seller is a merchant with respect to goods of that kind. *See* AS 45.02.314(a); *Prince v. LeVan*, 486 P.2d 959, 964 (Alaska 1971). The Shooshanians allege that the insulation was obtained from Borden or one of its divisions, a fact which Borden denies. Borden also denies the Shooshanians' allegations that they relied on Borden's representations as to the characteristics and properties of Insulspray, including the implied representation that the insulation was fit for the purposes for which it was sold. Borden disputes the Shooshanians' claims that the insulation gave off noxious and malodorous fumes, and that they suffered damage to

may not be the kind to which the party is in fact entitled to obtain. *See Miller v. Johnson*, 370 P.2d 171, 172 (Alaska 1962).

their property and business as a result. We find that the trial court erred in dismissing this portion of the complaint. The defendants' denials of the Shooshanians' allegations may be entirely accurate, but this court must admit the allegations for the purposes of testing their legal sufficiency. The Shooshanians have stated a claim upon which relief can be granted under a theory of implied warranty of merchantability.

There is no longer any requirement in Alaska that privity exist between the buyer and seller for recovery of property damage or economic loss under a breach of warranty theory. *Morrow v. New Moon Homes,* 548 P.2d 279, 288–89 (Alaska 1976). The Shooshanians may therefore bring suit against Borden, even though they did not purchase the Insulspray directly from the manufacturer.

### B. *Notice*

The trial court held that the Shooshanians could not sustain a cause of action for breach of warranty against Borden because they had failed to comply with the statutory notice requirement, which provides that "if a tender has been accepted, the buyer must, within a reasonable time after he discovers or should have discovered a breach, notify the seller of the breach or be barred from any remedy." AS 45.02.-607(c)(1).

Borden argues that our decision on this issue should be governed by *Armco Steel Corp. v. Isaacson Structural Steel Co.,* 611 P.2d 507 (Alaska 1980). In *Armco,* we held that a steel fabricator's third party complaint against its supplier did not constitute notice within the meaning of AS 45.05.-174(c)(1), the predecessor to AS 45.02.-607(c)(1). 611 P.2d at 513. We also noted, however, that "this decision is reached in a case involving merchants who are litigating a commercial claim. A comparably strict application of the notice requirement of AS 45.05.174(c)(1) may not be appropriate in a case involving a consumer's claim of breach." *Id.* at 513 n. 15 (citations omitted). Courts generally have recognized that a more rigorous notice standard should

apply to dealings between merchants than applies to ordinary consumers. *See, e.g., Eastern Air Lines v. McDonnell Douglas Corp.,* 532 F.2d 957, 977 (5th Cir.1976).

 In recent years, the notice requirement has been considerably relaxed in suits for breach of warranty. Oral notice to the seller that problems exist may suffice. *See generally Stelco Industries v. Cohen,* 182 Conn. 561, 438 A.2d 759 (1980); *Oregon Lumber Co. v. Dwyer Overseas Timber Products,* 280 Or. 437, 571 P.2d 884 (1977). Notice may be given in one or in several communications and need not be a specific claim for damages or an assertion of legal rights. *T.J. Stevenson & Co. v. 81,193 Bags of Flour,* 629 F.2d 338, 359 (5th Cir.1980).

The purposes for requiring notice were succinctly stated in *Prutch v. Ford Motor Co.,* 618 P.2d 657 (Colo.1980):

> First, notice provides the seller a chance to correct any defect. Second, notice affords the seller an opportunity to prepare for negotiation and litigation. Third, notice provides the seller a safeguard against stale claims being asserted after it is too late for the manufacturer or seller to investigate them.

*Id.* at 661 (citations omitted). The official comments to the Uniform Commercial Code's notice provision similarly state that "[t]he notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through litigation." *See* U.C.C. § 2-607, Comment 4 (1976).

 The majority of courts do not allow the filing of a complaint to serve as notice. We disagree, and are of the opinion that a complaint filed by a retail consumer within a reasonable period after goods are accepted satisfies the statutory notice requirement. The filing of a complaint is certainly not a bar to the negotiation and settlement of claims. To the contrary, the prospect of going to trial is often a powerful incentive to a defendant to investigate the claims

against it and to arrive at a reasonable agreement. A defendant may more easily and effectively prepare for either settlement or trial when it may compel discovery and so determine for itself the basis for a plaintiff's claims of liability. Allowing a consumer's complaint to serve as notice will not prevent a defendant manufacturer from raising the issue of timeliness if it has been prejudiced by an unreasonable delay.

A consumer unfamiliar with commercial practices should not be barred from pursuing a meritorious claim because he was unaware of the need to notify a remote seller of breach before bringing suit. *See Greenman v. Yuba Power Products,* 59 Cal.2d 57, 27 Cal.Rptr. 697, 700, 377 P.2d 897, 900 (1962).[6] In some cases, a consumer may not even know who produced an allegedly defective product until he files a complaint and begins discovery. A rule requiring notice prior to suit could effectively prevent an injured consumer from joining a manufacturer as a party· defendant in a suit already begun.

For these reasons we hold that, by filing a complaint and serving process on Borden, the Shooshanians satisfied the notice requirement of AS 45.02.607(c)(1). We conclude that the Shooshanians did state a claim against Borden for breach of express and implied warranties and that the superior court erred when it dismissed the Shooshanians' complaint for failure to state a claim upon which relief could be granted.

## V. STRICT PRODUCTS LIABILITY

In *Bachner v. Pearson,* 479 P.2d 319 (Alaska 1970), we stated that "implied war-

ranty and strict products liability are sufficiently similar to require that a complaint worded in terms of the former theory should be deemed to raise a claim under the latter theory." *Id.* at 326–27 n. 15. *See also Morrow v. New Moon Homes,* 548 P.2d at 283. The Shooshanians' breach of warranty allegations therefore raise a strict products liability issue. Borden contends, however, that the Shooshanians claim damages for economic loss only, and thus may not maintain an action in strict products liability.

Our decision in *New Moon Homes* established that a plaintiff may not recover under a theory of strict products liability for purely economic losses. *Id.* at 285–86. We approved of the distinction drawn by the California Supreme Court in *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), between economic losses caused by a defective product, which are properly compensable in a warranty action, and damages for physical injury, which are recoverable in strict products liability.[7] We have since held that property damage may also be recovered in a strict products liability action. *Cloud v. Kit Manufacturing Co.,* 563 P.2d 248, 250 (Alaska 1977).

■ The essence of the Shooshanians' strict products liability claim is their allegation that the Insulspray manufactured and marketed by Borden and incorporated into the Shooshanians' property is dangerously defective because it emits toxic fumes that have caused physical harm to the occupants and will continue to pose a health threat. To alleviate the risk, the Shooshanians must tear out the inner walls of the building,

---

6. The plaintiff in *Greenman* claimed damages for personal injuries, rather than damage to property or economic loss. However, as we noted in *New Moon Homes,* 548 P.2d at 291, "there is no satisfactory justification for a remedial scheme which extends the warranty action to a consumer suffering personal injury or property damage but denies similar relief to the consumer 'fortunate' enough to suffer only direct economic loss." We similarly do not see any reason to discriminate with regard to the form of notice required of persons seeking damages for different kinds of injuries.

7. In *Seely v. White Motor Co.,* 45 Cal.Rptr. at 23, 403 P.2d at 151, the court stated:

The distinction rests ... on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands.

remove the Insulspray, and replace both the walls and the insulation.

We hold that the Shooshanians have stated a claim for damage to their property. Their claim is different from the one raised in *New Moon Homes,* where we denied recovery under a strict products liability theory. The Morrows were disappointed because the mobile home they purchased had a leaky roof, ill-fitting windows and doors, a noisy furnace and other features that made the mobile home so poor a bargain that the Morrows refused to continue making payments. The relevant complaint here is not that the Shooshanians received poor insulation for their money. Rather, they maintain that the incorporation of an allegedly toxic substance in their building has physically altered it in a manner which makes it harmful to them, and that the physical damage to the property may be measured by the cost of repairing the walls to make them safe.

Borden argues that our decisions in *Cloud,* 563 P.2d 248 (Alaska 1977), and *Northern Power & Engineering Corp. v. Caterpillar Tractor Co.,* 623 P.2d 324 (Alaska 1981), establish a "sudden and calamitous loss" test for strict liability loss. On the contrary, as we noted in *Northern Power,*

> [a] "sudden and calamitous" event has never been the test of what constitutes "property damage." In *Cloud,* we merely said that "sudden and calamitous damage will almost always result in property damage...." 563 P.2d at 251. Immediately preceding this statement we indicated our inability to formulate an all inclusive rule to distinguish property damage from economic loss. In light of our opinion today, we think the phrase has limited future utility.

*Northern Power,* 623 P.2d at 328 n. 5. Borden argues further that the "dangerous circumstances" test articulated in *Northern Power* excludes the Shooshanians' strict products liability claim. In *Northern Power* we stated that "[t]he requirement that the loss occur under dangerous circumstances is necessary because, in our view, allowing recovery solely on proof that a defect *could* endanger persons or property is too speculative." *Id.* at 329 n. 11 (emphasis in original).

The facts in *Northern Power* distinguish that case from the situation presently before us. In *Northern Power,* the purchaser filed a third party claim against the manufacturer of a diesel powered electrical generator for losses sustained when the engine seized. There was no evidence of damage to persons or to property, other than to the defective product itself, and no evidence that the engine failure created a risk of harm to persons or other property.

In the present case, the Shooshanians have alleged that Insulspray's toxicity has already affected their health and will continue to do so unless their living and working environment is physically altered. In order to remove the insulating foam they must partially destroy the walls of their home and business and then rebuild them. While the Shooshanians cannot pursue their claims for personal injury damages, they may adduce evidence of Insulspray's harmful physical effects in support of their claim for property damage. The critical inquiry is whether the product is dangerously defective, and whether the dangerous defect caused the property damage alleged by the Shooshanians. *See, e.g., Butaud v. Suburban Marine & Sporting Goods,* 543 P.2d 209, 214 (Alaska 1975), *modified on reh'g.,* 555 P.2d 42 (Alaska 1976). Accordingly, we hold that the Shooshanians are not barred as a matter of law from maintaining a cause of action in strict products liability for damage to their property.

## VI. NEGLIGENCE

 In order to establish a cause of action for negligence, a plaintiff must show a duty of care owed to him by the defendant, a breach of that duty, and that damage was proximately caused by the breach. *See Leigh v. Lundquist,* 540 P.2d 492, 494 (Alaska 1975); *Larman v. Kodiak Electric Ass'n,* 514 P.2d 1275, 1279 (Alaska 1973). In their first amended complaint, the Shooshanians allege that the Insulspray insulation used in

their building was obtained from Borden or one of its affiliates, that the Shooshanians were never warned that Insulspray was defective or hazardous to health, that Borden knew or should have known that Insulspray was likely to cause noxious fumes and odor, that the product could not be used in any inhabited building, and as a result of the defendant's negligence the Shooshanians sustained damages of approximately $250,000. Borden denies these allegations.

■ Alaska has adopted liberal rules of pleading and requires only that a complaint contain "(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled." Alaska R.Civ.P. 8(a). *See Schaible v. Fairbanks Medical & Surgical Clinic,* 531 P.2d 1252, 1256 (Alaska 1975). It is evident from the face of their pleadings that the Shooshanians allege that Borden breached its duty to inspect its product, or, alternatively, that it breached a duty to warn purchasers of any defects that it knew or should have known about. The Shooshanians further allege that such failure caused them to be damaged. These allegations state a claim for negligence upon which relief could be granted sufficient to withstand a motion to dismiss.

## VII. UNFAIR TRADE PRACTICES ACT

■ The Shooshanians' amended complaint alleges damages for violation of the Alaska Unfair Trade Practices and Consumer Protection Act, AS 45.50.471 *et seq.* The superior court dismissed this claim, primarily because it concluded that the statute of limitation had run before the amended complaint was filed.[8] Civil Rule 15(c) provides

in relevant part, however, that "[w]herever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." There can be little dispute that the Shooshanians' Unfair Trade Practices claim arose out of the same transaction as set forth in their original pleadings. Accordingly, the Unfair Trade Practices claim relates back to the September 1978 complaint, and it was error to dismiss the claim as barred by the statute of limitation.

■ We turn now to the superior court's decision that the Shooshanians' failed to allege subject matter jurisdiction under the Unfair Trade Practice Act.[9] AS 45.50.471(a) requires a consumer who is alleging a violation of the Act to "bring a civil action in the judicial district in which the seller or lessor resides or has his principal place of business or is doing business." It is undisputed that Borden is a New Jersey corporation with its principal place of business in Ohio. The Shooshanians failed to set forth in their amended complaint the essential allegation that Borden was "doing business" in Alaska within the meaning of AS 45.50.531(a). However, dismissing the claim on the basis of this technicality was inappropriate. The Shooshanians offered additional evidence at the hearing which bore on this issue, although it was purportedly offered to support a claim of agency.[10] We are reviewing the dismissal as if it were under Civil Rule 12(b)(6). The omission of an allegation that Borden was "doing business" in Alaska presents precisely the sort of technical deficiency that could be cured

**8.** Technically, the Shooshanians never received leave from the federal court to amend their complaint to include their claim. However, we conclude from the record before us that the superior court considered the motion to amend to have been granted.

**9.** For purposes of this appeal, we consider the superior court's dismissal of this section of the Shooshanians' complaint to rest alternatively on a lack of subject matter jurisdiction.

**10.** There was testimony at the hearing as follows:

> Court: ... Mr. Tallman, do you have any other type of evidence, that you're basing your agency claim on?
> Mr. Tallman: Only the conduct of the [sic] Borden in coming up to Alaska and working and dealing here with their people.

through an amendment under Civil Rule 15(a). In *Copper Valley Trading Co. v. Kratz,* 513 P.2d 1113, 1115 (Alaska 1973), we held that, under Alaska Civil Rule 15(a), a trial court may allow whatever amendment may be necessary to rectify any deficiency in the pleadings. We conclude that the superior court erred in dismissing this part of the Shooshanians' complaint for lack of subject matter jurisdiction. Leave to amend the complaint should have been granted in order to afford the Shooshanians the opportunity to cure their technical pleading deficiency.

## VIII. CONCLUSION

We conclude that the superior court erroneously dismissed the Shooshanians' complaint for failure to state a claim upon which relief may be granted and therefore REVERSE its decision and REMAND the case for further proceedings consistent with this opinion.[11]

---

11. In light of our disposition of the case, we do not reach the issue, raised by Borden on cross-appeal, of whether the superior court erred by failing to award costs to Borden as the prevailing party.