Robert BETZ and Madeleine Betz, husband and wife, individually and Robert and Madeleine Betz d/b/a Hot Springs Hostel, Appellants,

v.

CHENA HOT SPRINGS GROUP, a Limited Partnership and Parlour House, Inc., its wholly owned subsidiary, and Bill Kinn and Roger Cotting, General Partners of Chena Hot Springs Group, Individually, Appellees.

No. S–1948.

Supreme Court of Alaska.

Sept. 25, 1987.

Robert C. Erwin, Erwin & Smith, Anchorage, for appellants.

Millard F. Ingraham, Anchorage, and David L. White, Jennings, Strouss & Salmon, Phoenix, Ariz., for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

This appeal is from the denial of a motion to amend a complaint to add an antitrust claim. We reverse.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The facts are not in dispute.[1] The Chena Hot Springs Group (CHS) owns and operates Chena Hot Springs Resort. CHS is a limited partnership which had, at one time, three general partners: Robert Betz, William Kinn and Roger Cotting. In August 1980, Betz was voted out as a general partner. The earlier litigation between these parties concerned the propriety of Betzes' forced retirement and the valuation of his partnership interest.

Robert and Madeleine Betz filed the complaint in this action in September 1980 and an amended complaint in May 1982. The amended complaint alleged that the Betzes constructed an eight-plex on land leased from CHS and operated it under the name

---

1. Some background information is taken from *Betz v. Chena Hot Springs Group,* 657 P.2d 831, 832 (Alaska 1982).

of Hot Springs Hostel. On June 30, 1980, CHS, its wholly owned subsidiary, Parlour House, Inc., Kinn and Cotting (collectively CHS) and the Betzes entered an agreement for operation of the eight-plex for a term of ten years. The Betzes claimed that in May 1981, CHS sent them a letter wrongfully terminating the contract and stating that all utilities serving the eight-plex would be cut off immediately. The Betzes asserted that this breach of contract forced them out of business "thus lessening competition and creating a monopoly to operate hotel facilities at Chena Hot Springs Resort by CHS in violation of AS 45.50.562."

In December 1985, CHS moved for partial judgment on the pleadings on the antitrust count. CHS argued that AS 45.50.-562 was based upon and should be construed consistently with section 1 of the Sherman Act, (Sherman 1) 15 U.S.C. § 1 (1982). A recent United States Supreme Court decision had clarified that a corporation, its affiliated companies, wholly owned subsidiaries and officers and employees were not separate entities capable of contracting, combining or conspiring in violation of Sherman 1. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 777, 104 S.Ct. 2731, 2744–45, 81 L.Ed.2d 628, 647 (1984). Since the Betzes had sued only CHS, its wholly owned subsidiaries and its general partners, CHS claimed that their Sherman 1 type claim was fatally defective.

In response, the Betzes essentially conceded that they had no Sherman 1 claim, but argued that a single firm could unlawfully create a monopoly under section 2 of the Sherman Act (Sherman 2), 15 U.S.C. § 2, and that a similar interpretation should be given to AS 45.50.564 under *West v. Whitney-Fidalgo Seafoods, Inc.*, 628 P.2d 10, 14 (Alaska 1981). The Betzes argued that the antitrust count could be saved by "a simple amendment to the statutory reference" and that their claim was similar to one recently approved by the United States Supreme Court in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985). The Betzes did not, however, move to amend at that time. In February 1986,

the superior court found the claim as pled to be defective under *Copperweld.* The court refused to "speculate as to the nature of the Betzes' possible amendment" and stated that merely changing the statute allegedly violated from AS 45.50.562 to AS 45.50.564 "may be insufficient to defeat the present motion."

The Betzes moved to amend their complaint in May 1986. At that time trial was set for September 15, 1986, with a discovery cut-off date of August 29, 1986. The superior court denied the Betzes' motion to amend but stated no reasons for its ruling.

The Betzes then moved the court to reconsider its denial of their motion to amend. In the alternative, the Betzes requested that the court issue a final order pursuant to Civil Rule 54(b) and stay proceedings pending appeal to this court. The court denied both requests, again giving no reasons its rulings.

The Betzes next moved to continue the trial date for ninety days and the discovery cut-off until sixty days before trial because Madeleine Betz required surgery. By Pretrial Order dated September 1986, the trial was put over until September 1987 and the discovery cut-off moved to August 1987.

The Betzes filed another motion to amend in October 1986, arguing that the superior court's denial of their first motion to amend was probably due to the imminent trial date. They argued that since the trial had been postponed for almost a year, this was no longer a concern. The proposed amendment added some factual allegations and charged that CHS had violated AS 45.50.564, rather than section 562.

The trial court denied the motion, "for all of the reasons set forth in the opposition to motion amending complaint filed by Chena Hot Springs Group, Kinn and Cotting." The court also entered final judgment, pursuant to Civil Rule 54(b), denying the motion to amend the complaint.

We hold that the trial court abused its discretion in failing to allow the Betzes leave to amend their antitrust claim.

## II. DISCUSSION

### A. STANDARD OF REVIEW.

 A party who desires to amend his complaint after a responsive pleading has been filed must seek leave of the court. Alaska R.Civ.P. 15(a). The superior court has broad discretion to determine whether to allow or refuse the amendment and we will interfere only when that discretion has been abused. *Shooshanian v. Wagner*, 672 P.2d 455, 458 (Alaska 1983); *Wright v. Vickaryous*, 598 P.2d 490, 495 (Alaska 1979). We will reverse a ruling for abuse of discretion only when left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling. *Vertecs Corp. v. Reichhold Chemicals, Inc.*, 671 P.2d 1273, 1277 (Alaska 1983); *Peter Pan Seafoods, Inc. v. Stepanoff*, 650 P.2d 375, 378–79 (Alaska 1982).

### B. MOTION TO AMEND.

 Leave to amend shall be "freely given when justice so requires...." Alaska R.Civ.P. 15(1). Alaska Civil Rule 15(a) is identical to Federal Rule of Civil Procedure 15(a), regarding which the United States Supreme Court has instructed:

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), ¶¶ 15.08, 15.10. *If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.* In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. —the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222, 226 (1962), (empha-

sis added) *quoted in Wright v. Vickaryous*, 598 P.2d at 495.

The superior court denied the Betzes' motion to amend "for all of the reasons stated by CHS in their opposition to the motion." CHS argued there that leave to amend should be denied as unduly delayed, causing undue prejudice, offered in bad faith,[2] and futile. These are all factors identified by the United States Supreme Court as indications that allowance of an amendment might in that instance properly be denied. *Foman v. Davis*, 371 U.S. at 182, 83 S.Ct. at 230, 9 L.Ed.2d at 226. We have further instructed that the trial court "must apply a balancing test to decide whether the amendment should be granted, weighing the degree of prejudice to the opposing party against the hardship to the movant if the amendment is denied." *Shooshanian v. Wagner*, 672 P.2d at 458, citing *Wright v. Vickaryous*, 598 P.2d at 495 n. 13; *see also Rutledge v. Alyeska Pipeline Service Co.*, 727 P.2d 1050, 1055 (Alaska 1986). We consider each of these factors in turn.

#### 1. Undue Delay.

Although "[i]t is a long established maxim of equity jurisprudence that parties may not sleep upon their rights," *Shooshanian v. Wagner*, 672 P.2d at 458, we have stated that delay alone is an insufficient basis upon which to deny a motion to amend. *Rutledge v. Alyeska Pipeline Service Co.*, 727 P.2d at 1054 (citing 3 J. Moore, *Moore's Federal Practice* ¶ 15.08[4], at 15–71 and n. 6 (1985)).

CHS repeatedly argues that the Betzes slept on their rights for five years, from the date the complaint was originally filed until their first motion to amend. CHS fails to acknowledge that until June, 1984, when the United States Supreme Court decided *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984), the Betzes quite understandably assumed that they had ade-

---

**2.** CHS has apparently abandoned its claim that the Betzes offered the amendment in bad faith.

There is no support for such a claim in the record.

quately pled an AS 45.50.562 [3] (Sherman 1) claim based on an "intra-enterprise" theory. CHS made no other challenge to the sufficiency of Count IV as pled in the first amended complaint.

The three month delay between the superior court's grant of judgment on the pleadings (February 2, 1986) and the Betzes' first formal motion to amend (May 15, 1986) was perhaps "undue" given the September 15, 1986 trial date and August 29, 1986 discovery cut-off. That motion was properly denied. However, once the trial was put over for a year, the Betzes wasted no time in renewing their effort. We conclude that this factor does not weigh heavily against the Betzes with regard to their second motion to amend.

### 2. Prejudice to CHS and Hardship to the Betzes.

CHS claims it would be prejudiced by allowance of the amendment, listing several factors: (1) added expense; (2) the need for additional discovery; (3) a lengthier or more burdensome trial; (4) the raising of new issues; (5) the loss of evidence and the dimming of memories; and (6) further delay in resolving the dispute. CHS has failed to show any significant prejudice.

One misperception relied upon by CHS goes to several of the above factors. CHS incorrectly asserts that the AS 45.50.564 [4] (Sherman 2) claim brings the complicated issues of product/service and geographic market definition and harm to competition into the case for the first time. CHS apparently assumes that such issues are not raised in AS 45.50.562 (Sherman 1) cases. In order to prevail under a Sherman 1 type claim, however, the plaintiff must show "both 1) the existence of a 'contract, combination ... or conspiracy,' and 2) an unreasonable restraint of trade under either the *per se* rule or the rule of reason, as appropriate." *Rothery Storage & Van Co. v. Atlas Van Lines,* 597 F.Supp. 217, 225 (D.D.C.1984) *aff'd,* 792 F.2d 210 (D.C.Cir. 1986), *cert. denied,* — U.S. —, 107 S.Ct.

880, 93 L.Ed.2d 834 (1987). Under the *per se* doctrine power is not an issue; the conduct involved in *per se* cases so blatantly restrains competition and is so lacking in any redeeming virtue that it is conclusively presumed to be unreasonable. L. Sullivan, *Antitrust* § 70, at 192–94 (1977) (hereinafter "Sullivan"). This, however, is not a case, such as price fixing, division of markets or group boycotts, in which courts customarily have applied the *per se* rule. Sullivan, §§ 70, 79–92. By contrast:

> [V]irtually all courts applying the rule of reason require the plaintiff to define the product and geographic market in which competition is allegedly restrained and to show, at a minimum, that the defendants play a significant role in that market.

VII P. Areeda, *Antitrust Law* ¶ 1503, at 376 (1986). Thus, since this case could foreseeably have received rule of reason rather than *per se* treatment, the issues of market definition and harm to competition were raised from the beginning.

Moreover, when the court dismissed the Betzes' claim under AS 45.50.562, the Betzes had already made known their intent to rely on AS 45.50.564. CHS's claim that evidence on this issue may have disappeared or witnesses' memories may have faded is not particularly compelling. CHS had notice of the probable relevance of such evidence from the start and could well have taken steps to preserve it.

CHS also claims prejudice from the addition of the issues of intent to violate the antitrust laws and predatory conduct. Intent can be inferred from predatory or anticompetitive conduct. *White & White, Inc. v. American Hospital Supply Corp.,* 723 F.2d 495, 507 (6th Cir.1983); *Richter Concrete Corp. v. Hilltop Concrete Corp.,* 691 F.2d 818, 826 (6th Cir.1982); *William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.,* 668 F.2d 1014, 1027–28 (9th Cir.), *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982); *Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.,* 627 F.2d 919, 926 (9th Cir.1980), *cert.*

---

**3.** AS 45.50.562 provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce is unlawful."

**4.** AS 45.50.564 provides: "It is unlawful for a person to monopolize, or attempt to monopolize, or combine or conspire with another person to monopolize any part of trade or commerce."

*denied,* 450 U.S. 921, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981); *Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co., Ltd.,* 467 F.Supp. 841, 851 (N.D.Cal.1979), *aff'd,* 658 F.2d 1256 (9th Cir.1981), *cert. denied,* 455 U.S. 1018, 102 S.Ct. 1713, 72 L.Ed.2d 135 (1982). Whether CHS's conduct should be considered sufficiently predatory does not require any additional fact finding. Once it is established exactly what CHS did, requiring CHS to apply a new legal theory to those facts is not the kind of prejudice that should defeat an amendment. *See Wright v. Vickaryous,* 598 P.2d at 495.

Thus, of the factors CHS cites in its attempt to show prejudice, the need for additional discovery, the raising of new issues, the loss of evidence, and the dimming of memories are not compelling. Equally unpersuasive is CHS's argument that allowing the amendment might further delay the trial since the trial was put over a year anyway. There is no evidence that a year would be insufficient time to prepare to try this new claim. On the other hand, as compared to a straight contract case, the addition of the antitrust claim probably would increase expenses and make for a lengthier or more burdensome trial. But these factors are not as compelling as they otherwise might be since CHS has been on notice of the Betzes' intent to assert a monopolization claim from the beginning.

Balanced against the prejudice to CHS is the hardship to the Betzes. If they are not allowed to amend and take advantage of the relation back doctrine they will be unable to bring their antitrust claim separately since it is time barred. AS 45.50.588. Moreover, the treble damages available under the antitrust statutes afford significantly different relief than that available under traditional contract theory. If the Betzes have a meritorious claim they lose the opportunity to win treble damages if the amendment is denied.

We hold that the hardship to the Betzes occasioned by denial of their amendment is great while the prejudice to CHS from allowing it is not substantial. Given the strong policy that a plaintiff "ought to be afforded the opportunity to test his claim on the merits," *Foman v. Davis,* 371 U.S.

at 182, 83 S.Ct. at 230, 9 L.Ed.2d at 226, the balance weighs in favor of allowing the amendment.

3. Futility of the Amendment.

The last ground on which CHS defends the superior court's decision is the rule that futile amendments should not be permitted. *Klamath-Lake Pharmaceutical Ass'n v. Klamath Medical Service Bureau,* 701 F.2d 1276, 1293 (9th Cir.), *cert. denied,* 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983). CHS claims the amendment would be futile for essentially two reasons: 1) the proposed second amended complaint fails to allege adequate facts to support a claim of intent to monopolize; and 2) the amendment was time barred.

a. Adequacy of the Betzes' Antitrust claim.

While the Betzes' proposed amendment is perhaps not a paradigm of artful pleading, the following allegations are included and adequately set forth a monopolization claim under AS 45.50.564. The Betzes allege that 1) CHS had a dominant position in the market for lodging for visitors to Chena Hot Springs; 2) CHS breached its agreement to operate the eight-plex, cut off hot water and other essential services and failed to make proper accounting and payment of funds owed to the Betzes under the contact, all with the specific intent of driving their only competition out of business, and 3) CHS achieved its purpose, thereby creating a monopoly.

CHS makes much of the Betzes' allegedly misplaced reliance on *West v. Whitney-Fidalgo Seafoods, Inc.,* 628 P.2d 10 (Alaska 1981) in which we adopted the rule that "proof of the relevant market and a probability of its monopolization are not essential elements of the offense of attempt to monopolize under [AS 45.50.564]." *Id.* at 16.

CHS correctly states that the Ninth Circuit, whose position we adopted in *West,* has since clarified and in essence narrowed this rule. In *M.A.P. Oil, Inc. v. Texaco, Inc.,* 691 F.2d 1303, 1309 (9th Cir.1982) the court made clear that lack of proof of relevant market and market power was *not* a fatal flaw in a plaintiff's case *only* if the

plaintiff could establish either predatory conduct or a *per se* violation of Sherman 1.

We need not here decide whether similarly to limit the rule we announced in *West* since the Betzes have adequately defined a relevant market and alleged that CHS had substantial power in that market. The relevant market is defined as lodging for visitors to the hot springs.[5] The Betzes allege that CHS and the Betzes were the only competitors in this market, and that CHS intentionally drove the Betzes out of business thereby creating for themselves a monopoly.

Moreover, the Betzes have alleged predatory conduct which has been defined as:

conduct which has the purpose and effect of advancing the actor's competitive position, not by improving the actor's market performance, but by threatening to injure or injuring actual or potential competitors, so as to drive or keep them out of the market, or force them to compete less effectively.

Sullivan, § 43 at 108. Cutting off hot water and other essential services to the eight-plex surely does not constitute an attempt by CHS to improve the quality of its own guest lodging and just as surely injured the Betzes' ability to compete.

Alaska rules of pleading are liberal and require only that a complaint contain "(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and 2) a demand for judgment for the relief to which he deems himself entitled." Alaska R.Civ.P. 8(a); *see also Shooshanian v. Wagner*, 672 P.2d at 465. The Betzes have alleged facts stating a claim even under the Ninth Circuit standard. *See also Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985).

b. Statute of Limitations.

CHS claims the Betzes' proposed claim is time barred. The limitations period is four years, AS 45.50.588, and runs from the alleged last act causing plaintiffs' injury. *Zenith Radio Corp. v. Hazeltine Research,*

*Inc.*, 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77, 92 (1971). The Betzes first proposed their AS 45.50.564 claim in 1986, more than four years after CHS allegedly breached the contract and drove the Betzes out of business in 1981.

However, Alaska Civil Rule 15(c) provides in part:

(c) *Relation Back of Amendments.* Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

The relation-back rule has been very liberally applied. *Estate of Thompson v. Mercedes-Benz, Inc.*, 514 P.2d 1269, 1273 (Alaska 1973). The theory behind the rule is that "[a] party who is notified of the litigation concerning a given transaction or occurrence has been given all the notice that statutes of limitations are intended to afford." *Id.* (*quoting*) 3 J. Moore, *Moore's Federal Practice*, ¶ 15.15[3], at 1025 (2d ed. 1972).

The Betzes' claim under AS 45.50.564 arises out of exactly the same conduct— CHS's breach of contract, cutting off hot water and other services and improper accounting—as that upon which they based their AS 45.50.562 claim and on which they continue to base their contract claim.

The amendment therefore relates back under Rule 15(c) and is not time barred.

### III. CONCLUSION

The superior court abused its discretion in refusing to allow the Betzes to amend their complaint. Their proposed amendment adequately states a claim for relief under AS 45.50.564. The superior court's decision is reversed and the case remanded with instructions that the superior court allow the Betzes' amendment.

---

**5.** We do not decide whether in fact this is an acceptable market definition, only that it is pled

as such.