Everett L. ANDREWS and Moneymaker/Hub City Construction Company, Inc. Appellants,

v.

William BRADSHAW, Appellee.

No. S–5580.

Supreme Court of Alaska.

May 26, 1995.

Thomas R. Wickwire, Fairbanks, for appellants.

Gary Foster, Call, Barrett & Burbank, Fairbanks, for appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON, JJ., and BRYNER, Justice Pro Tem.*

## OPINION

BRYNER, Justice Pro Tem.

## I. INTRODUCTION

Everett L. Andrews and Moneymaker/Hub City Construction Co., Inc., appeal the superior court's order precluding Andrews' testimony at trial based on a violation of the court's underlying order directing their counsel to make Andrews available for a deposition during the two weeks preceding trial. We reverse the superior court's order and remand the case for further proceedings consistent with this opinion.

* Sitting by assignment made under article IV, sec-

## II. FACTS AND PROCEEDINGS

In December 1990 William Bradshaw filed suit against Everett Andrews and Moneymaker/Hub City Construction, Inc., (hereinafter Andrews/Moneymaker) for breach of contract, arising out of services that Bradshaw performed for Andrews/Moneymaker. The pretrial order required that the parties file witness lists by September 11, 1992. On September 11, 1992, Andrews/Moneymaker timely filed its witness list, naming Andrews as a witness. Andrews/Moneymaker's counsel, Thomas Wickwire, alleges that on the same day, it served a copy of the witness list on opposing counsel. Bradshaw's counsel, Gary Foster, submits that he never received a copy of this witness list, and thus canceled his scheduled deposition of Andrews, allegedly presuming that Andrews/Moneymaker did not intend to call any witnesses.

Upon discovering that Andrews/Moneymaker did, in fact, file a witness list, Foster faxed a letter to Wickwire, informing him that Foster had not received the witness list. Foster indicated that he did not intend to make a motion regarding delinquent receipt of the witness list, provided that he be permitted to take Andrews' deposition and that Wickwire provide him with a short statement of the proposed testimony of two other named witnesses. Wickwire refused to comply with Foster's requests, claiming that the process server delivered the witness list to Foster's office and that Wickwire was not accountable for any mistake in delivery beyond the reception desk.

At the November 6, 1992 pretrial conference, Bradshaw requested that the court preclude Andrews/Moneymaker from presenting any witnesses due to the delinquent receipt of the witness list. The court, Judge Mary E. Greene presiding, found that although it was unclear who was at fault, a mistake had occurred somewhere in the delivery process and that Bradshaw had been prejudiced as a result. Judge Greene decided not to preclude testimony of the witnesses on the condition that Andrews/Moneymaker's counsel provide Bradshaw's counsel with statements

tion 16 of the Alaska Constitution.

of two named witnesses' proposed testimony and arrange for Andrews to be available for a deposition during one of the two weekends before trial was scheduled to begin on November 16 before Judge Martha Beckwith.

Wickwire expressed reservations as to Andrews' availability for a deposition, disclosing that Andrews was out of town, transporting his ailing father from Pennsylvania to Alaska. In response to counsel's qualms, Judge Greene stated that counsel could make Andrews available telephonically, adding that, if counsel failed to make Andrews available, "He isn't gonna testify."

On November 17, one day before trial actually commenced,[1] Wickwire faxed a letter to Foster which, in accordance with Judge Greene's order, provided the anticipated testimony of the two named witnesses. In the letter, Wickwire proposed to arrange to have Andrews available for a telephonic interview at some point during the trial. Later the same day, Wickwire also offered Foster the opportunity to take Andrews' deposition that evening. Foster rejected the proposal and informed Wickwire that he planned to object to the calling of Andrews as a witness at trial.

On November 18 before selection of the jury, Wickwire requested that Judge Beckwith rule on whether the court would permit Andrews to testify. Judge Beckwith reasoned that because Judge Greene's pretrial order expressly conditioned the admissibility of Andrews' testimony on his counsel's making him available for a telephonic deposition prior to trial, and his counsel failed to schedule such a deposition, Andrews would not be permitted to testify.

The jury returned a verdict for Bradshaw. This appeal followed.

1. Due to a conflict with another trial in which Andrews/Moneymaker's counsel was involved, the trial was postponed two days until November 18, 1992.

2. We review discovery sanctions for abuse of discretion. *Underwriters at Lloyd's London v. The Narrows*, 846 P.2d 118, 119 (Alaska 1993); *Rohweder v. Fleetwood Homes of Oregon, Inc.*, 767 P.2d 187, 190 (Alaska 1989). "We will reverse a ruling for abuse of discretion only when left with a definite and firm conviction, after

## III. DISCUSSION

Andrews/Moneymaker appeals both the court's order directing their counsel to make Andrews available for a deposition during the two weeks preceding trial and the court's decision to preclude Andrews' testimony upon failure to comply with the order.[2]

### A. The Deposition Order

Judge Greene ordered Andrews/Moneymaker's counsel to make Andrews available for a deposition on a weekend prior to commencement of trial because she found that Bradshaw's counsel had not received a copy of the witness list filed by Andrews/Moneymaker. Andrews/Moneymaker argues that because Andrews is a party, his name did not have to appear on a witness list. Andrews/Moneymaker further argues that upon receiving no witness list, Bradshaw's counsel should have reasonably presumed that a mistake had occurred, given that Andrews/Moneymaker's case management memorandum stated that they intended to call approximately six witnesses, and should not have canceled Andrews' scheduled deposition. Therefore, Andrews/Moneymaker argues that the superior court abused its discretion by ordering its counsel to make Andrews available for a deposition prior to trial.

Andrews/Moneymaker's argument is without merit. Whether Bradshaw's counsel should have reasonably presumed that Andrews was going to testify is not the issue. The issue is whether the court abused its discretion in ordering the deposition. Judge Greene found that regardless of fault, Bradshaw's counsel did not see the witness list and was prejudiced as a result.[3] Judge Greene attempted to strike a balance that

reviewing the whole record, that the trial court erred in its ruling." *Betz v. Chena Hot Springs Group*, 742 P.2d 1346, 1348 (Alaska 1987).

3. Based on Foster's statements that he never received the witness list, Judge Greene's factual determinations were not clearly erroneous. *Cf. Parker v. Northern Mixing Co.*, 756 P.2d 881, 892 (Alaska 1988) ("[I]t is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence.").

would accommodate both parties and enable them to proceed to trial as scheduled. In allowing the deposition to be conducted telephonically, the court considered Andrews' predicament of being "on the road" and fashioned its order accordingly. We conclude that the court did not abuse its discretion in ordering Andrews/Moneymaker's counsel to make Andrews available for a telephonic deposition prior to trial.

### B. *Preclusion Order*

■ Andrews/Moneymaker argues that Judge Beckwith abused her discretion in precluding Andrews' testimony for failing to comply with the court's order requiring that he be available for a deposition.

Judge Greene ordered Andrews/Moneymaker's counsel to "make [Andrews] available for a deposition" on one of the two weekends preceding trial. She stated to counsel, "You can make him available telephonically, and if Mr. Foster wants to take it on one of these two weekends that are between now and the time of trial, that's fine, he can do so."

When Andrews/Moneymaker's counsel disclosed that the matter had slipped his mind and that the deposition had not been arranged, Judge Beckwith responded by precluding Andrews from testifying:

I find that you did violate the spirit of Judge Greene's order, whether intentional or not, and that the sanction for that is preclusion of Mr. Andrews testifying, and that was Judge Greene's clear statement at the time.

In our view, the trial court abused its discretion by ordering preclusion based solely on Judge Greene's prior warning, and without any independent determination of the reasonableness of preclusion under the totality of the circumstances that existed at the time the sanctions were ordered.

Although the forgetfulness of Andrews/Moneymaker's counsel would hardly seem to constitute excusable neglect, it is apparent, considering the totality of the circumstances, that Bradshaw's counsel likewise failed to conduct himself in a manner comporting with "the spirit of Judge Greene's order."

Judge Greene's original order requiring Andrews' deposition to be held on one of the two weekends prior to trial plainly contemplated the cooperation of both counsel in the scheduling and taking of the deposition. Although the deposing party would ordinarily be required to take the initiative in arranging a deposition, given the limited time remaining, Bradshaw's counsel obviously would have been unable to depose Andrews without the assistance of Andrews/Moneymaker's counsel. Thus, as we have already indicated, it was appropriate for Judge Greene to order Andrews/Moneymaker's counsel to cooperate in the holding of Andrews' deposition, and the judge plainly intended to order such cooperation.

On the other hand, however, it is difficult to construe Judge Greene's order as one that required Andrews/Moneymaker's counsel to bear the entire burden of arranging the deposition. The record gives no indication that Judge Greene meant to shift full responsibility for Andrews' deposition to Andrews/Moneymaker. Judge Greene had no apparent reason to force Andrews/Moneymaker to bear the full responsibility for the deposition. While such an order might have made sense as a sanction for dilatory conduct on Andrews/Moneymaker's part, Judge Greene had not found either party at fault for the failure to arrange a timely deposition. Nor does a common sense reading of Judge Greene's admonition requiring Andrews/Moneymaker's counsel to "make [Andrews] available" suggest that the court expected one party to bear the responsibility for the deposition. Rather, the wording of admonition implies that the court expected that counsel for both parties would agree on a mutually acceptable time and date for the deposition, that Bradshaw's counsel would make the usual arrangements for the deposition to be held, and that Andrews/Moneymaker's counsel would then "make [Andrews] available" by ensuring his appearance on short notice, either telephonically or in person.

Although Andrews/Moneymaker's counsel failed to notify Bradshaw's counsel regarding a specific time to depose Andrews, Brad-

shaw's counsel similarly failed to take any steps toward taking the deposition, evidently contenting himself with allowing the two weekends remaining before trial to pass without inquiring of opposing counsel or notifying the court. Because Judge Greene's order realistically charged counsel for both parties with mutual responsibility for taking Andrews' deposition, the parties were mutually responsible for the failure to arrange for the deposition to be taken.

In entering the preclusion order, Judge Beckwith did not reject Andrews/Moneymaker's counsel's explanation or determine whether Andrews/Moneymaker's counsel acted willfully;[4] the judge similarly made no effort to independently evaluate the reasonableness of Bradshaw's conduct under the circumstances, and failed to explore the suitability of alternative sanctions. Instead, Judge Beckwith simply accepted and enforced Judge Greene's previous warning that Andrews would not be permitted to testify if he were not made available for a deposition. By precluding Andrews from testifying, the trial court imposed severe sanctions for the unexcused inaction of Andrews/Moneymaker's counsel. In the process, however, the court allowed Bradshaw to reap a windfall benefit from his own counsel's equally unjustified—and evidently tactical—inaction.

The discovery process is meant to promote the search for truth, not to reward gamesmanship.[5] Considering the totality of the circumstances, we conclude that the trial court abused its discretion in precluding Andrews from testifying.

## IV. CONCLUSION

For the foregoing reasons, we REVERSE the superior court's order precluding Andrews from testifying at trial, and REMAND for further proceedings consistent with this opinion.

COMPTON, J., dissents in part.

COMPTON, Justice, dissenting in part.

After reviewing the record as a whole, I am not left with a definite and firm conviction that the trial court abused its discretion in precluding Mr. Andrews from testifying. Therefore, I dissent as to that issue.

Judge Mary E. Greene found: (1) Mr. Foster did not see the witness list; (2) he did not know that Mr. Wickwire had filed a witness list; and (3) he had been prejudiced by his failure to be informed that Mr. Wickwire had filed a witness list. These findings are not challenged on appeal. In addition to Judge Greene's findings, Mr. Wickwire himself admitted that he had no doubt that Mr. Foster never saw a witness list.

As this court notes, when Mr. Foster became aware that Mr. Wickwire had filed a witness list, Mr. Foster tried to resolve the matter informally. He suggested that he would not move to strike Mr. Wickwire's witness list if Mr. Wickwire would do two things: "First, I want to take Mr. Andrews' deposition.... Secondly, I would like a short statement of what Witnesses No. 3 and 4—Richard Bush and Bill Putnam—will testify." Mr. Wickwire refused Mr. Foster's compromise, claiming that the process server delivered the witness list to Mr. Foster's office and Mr. Wickwire was not accountable for any mistake in delivery.[1]

Mr. Wickwire's refusal to remedy the failure of service of the witness list forced Mr. Foster to seek judicial resolution of the issue. A hearing was held on November 6, ten days prior to trial. As Judge Greene was about to direct Mr. Wickwire to remedy the situation, she remarked:

4. Because we reverse the trial court's sanction, we do not need to address whether the preclusion order amounted to an issue establishment sanction.

5. Cf. City of Valdez v. Salomon, 637 P.2d 298, 299 (Alaska 1981) (holding that trial court abused its discretion in granting default judgment to a party whose counsel employed inaction

as a tactical tool, after tacitly leading opposing counsel to believe that action was not necessary.)

1. Mr. Wickwire was under no obligation to cooperate with Mr. Foster, but, to quote Mr. Wickwire's own expression about Mr. Foster's later failure to contact him about Mr. Andrews' availability for a telephonic deposition, "it would have helped."

I think that it—it may very well not be your fault, that—it may have been that the mess-up happened somewhere else, which is why I'm not going to exclude you from calling witnesses, Mr. Wickwire. However, in fairness to the other side, when something unforseen happens, you know, *you need to make some—some allowances for that.* He didn't know that you'd filed one—and he relied on you not having filed one.

(emphasis added).

Mr. Wickwire informed Judge Greene that he had considered giving Mr. Foster a continuance, but that "my client [was] against that." The court directed Mr. Wickwire to supply summaries of the witnesses' testimony, "and you need to make [Mr. Andrews] available for a deposition on a weekend, between now and trial time, if you still want to take it, Mr.—Mr. Foster." Mr. Foster stated: "Yes, Your Honor, I do."

Mr. Wickwire then informed Judge Greene that there was yet another problem; Mr. Andrews was not in Fairbanks. He had left "[a] week ago Thursday, ... driving a truck to Seattle, taking a plane to Pennsylvania" to pick up his aging, ailing father and return him to Fairbanks. Mr. Wickwire was unsure if Mr. Andrews was going to be back by November 16, the date trial was scheduled to start. At that point Judge Greene said that "if you haven't managed to make him available for a deposition, then you can make him available telephonically." Stating that "[t]hose are the breaks," Judge Greene reiterated that Mr. Wickwire "can make him available telephonically, and if Mr. Foster wants to take it on one of these two weekends that are between now and the time of trial, that's fine, he can do so."

Mr. Wickwire did not make Mr. Andrews available. As this court notes, Mr. Foster did not contact Mr. Wickwire about Mr. Andrews' availability. Its holding focuses on Mr. Foster's failure to contact Mr. Wickwire about Mr. Andrews' deposition, although it would have been futile for him to do so. The conference at which Mr. Wickwire was told to make Mr. Andrews available was held on Friday, November 6, yet Mr. Wickwire did not speak with Mr. Andrews until November 15.[2] Mr. Wickwire had left the pretrial conference on Friday, and, because he had another trial starting that following Monday, he "just forgot to go back and calendar this, it was something I needed to do. That's my fault." Mr. Wickwire justifies his failure to comply with Judge Greene's order because he was "completely absorbed" in his other trial.[3]

On November 16 Mr. Wickwire filed his Motion for Continuance, *see* footnote 3 *supra,* in which he claimed that Mr. Andrews was not due to return to Fairbanks until November 25. He claimed to have made the motion "as soon as he learned from his client that it would not be possible for him to make it back to Fairbanks by Wednesday, November 18, 1992, the earliest date trial could begin." *Id.* In a supporting affidavit, Mr. Andrews stated that he had reservations to take the ferry from Bellingham, Washington on November 20, arriving in Fairbanks on or around November 25. This motion was opposed by Mr. Foster, and denied by Judge Martha Beckwith November 17.

In a November 17 letter to Mr. Foster, Mr. Wickwire remarked:

As you probably know, I have been in trial from the day after the pretrial conference started until about noon today. In being

---

**2.** It is possible that Mr. Wickwire talked to Mr. Andrews as early as Friday night, November 13. *See* note 3 *infra.*

**3.** Despite his claim of complete absorption, Mr. Wickwire was not so completely absorbed that on November 9 he could not file in this case a Reply (Memorandum On Motion To Disqualify Counsel) to an Opposition (To Motion For Order Requiring Withdrawal For Plaintiff's Counsel) he received that day. Additionally, when it became evident from messages left at Mr. Wickwire's office by Mr. Andrews that Mr. Andrews would

not return by November 18, Mr. Wickwire found time to write a motion for continuance including a supporting memoranda and affidavit. He did so by telephonically obtaining information from Mr. Andrews "on Friday night [November 13] and Saturday morning [November 14] and afternoon, then [preparing] the affidavit Saturday afternoon and [preparing] this motion [for continuance] on Sunday, November 15, 1992." Yet it was not until the afternoon of November 17 that Mr. Wickwire remembered summaries of the witnesses' testimony and the telephonic deposition.

absorbed by that case, I did not calendar a response date for getting you these written statements, nor do I recall Judge Greene setting one.... Concerning Mr. Andrews' telephonic deposition, I will advise you as soon as I have a telephone number for him where you can take his telephonic deposition either during the day or after 1:30 p.m. when the trial day is over. He is not in Alaska at this time, so I will be contacting him to get on a plane to return as soon as possible but, before doing that, I will have him available for his telephonic deposition as soon as I can contact him and set that up.[4]

At a hearing held November 18, immediately before the prospective jurors were to be seated, Mr. Wickwire remarked to Judge Beckwith: "Mr. Foster never called to remind me or anything, not that [Judge Greene's] order said he had an obligation to, but it would have helped." Later he again remarked that "it isn't Mr. Foster's responsibility to remind me." He candidly stated: "I take the responsibility for having walked out of here and not made a note of it, and that's why it didn't get done."

Mr. Wickwire then suggested to Judge Beckwith that remedies other than precluding Mr. Andrews from testifying might be appropriate and should be considered.[5] When Judge Beckwith asked why he was bringing this to the court's attention on the morning trial was to start, he remarked that it was "yesterday at 1:00 when I got out of my trial and ... that's when I realized that I had forgotten about my obligation ... to make the defendant available for his deposition." Following Mr. Foster's objections to alternative sanctions, Judge Beckwith did conclude they were not appropriate, were untimely, and ordered that Mr. Andrews be precluded from testifying.

My reading of the record makes it clear that the onus to proceed was on Mr. Wickwire. This starts with the failure of service of the witness list on Mr. Foster. When Mr. Foster tried to adjust the matter informally, Mr. Wickwire refused. When Judge Greene told Mr. Wickwire that he had to furnish a summary of the witnesses' testimony and make Mr. Andrews available for a telephonic deposition, Mr. Wickwire promptly forgot to do either. Indeed, by the time he realized he had forgotten to furnish a summary of the witnesses' testimony and make Mr. Andrews available, the two weekends had passed and the trial would have started, but for Mr. Wickwire's own unavailability. Judge Beckwith observes that it was Mr. Wickwire's obligation to make Mr. Andrews available. Mr. Wickwire admits that it was his responsibility to do so.

This court opines that Mr. Foster was engaging in "equally unjustified—and evidently tactical—inaction" in failing to take steps toward taking the deposition (a deposition which earlier he had noticed, and then

---

**4.** Mr. Wickwire's letter was faxed to Mr. Foster a day *after* the trial had been scheduled to start, and a day before it was rescheduled to start. One can wonder how productive it would have been for Mr. Foster to have called Mr. Wickwire earlier, since Mr. Wickwire apparently was unable to contact Mr. Andrews until November 15 (or 13, depending on which version of Mr. Wickwire's statements you chose to accept). Furthermore, one can wonder also at what point talking to Mr. Andrews still would have been of any value to Mr. Foster. Mr. Foster's response to Mr. Wickwire's letter was, in part: "I should not have to, nor am I going to take a party's deposition during the middle of trial."

**5.** Mr. Wickwire suggested that Judge Beckwith consider monetary sanctions to compensate Mr. Bradshaw for the actual cost of the prejudice incurred resulting from the wasted trip from the Aleutians to Fairbanks (although it is not entirely clear what costs Mr. Wickwire thought he ought to be responsible for; he blamed the court system for failing to inform Mr. Bradshaw that the trial could not have started November 16 in any event). He also suggested a continuance, presumably so that he could get Mr. Andrews there for Mr. Foster to depose. The court had just denied *Mr. Wickwire's* Motion for Continuance, necessitated by Mr. Andrews' unavailability for trial. Were the court to have granted Mr. Wickwire a continuance so that he could make Mr. Andrews available for a deposition, then Mr. Wickwire would have obtained the continuance he requested, and just had been denied, because Mr. Andrews was not available for trial. Mr. Wickwire claims that precluding Mr. Andrews from testifying would be too harsh a sanction for violating the order requiring that he make Mr. Andrews available for a deposition. It is difficult to imagine how it can be considered too harsh to preclude a party from testifying, when the party is unavailable for trial anyway.

cancelled when Mr. Wickwire failed to serve Mr. Foster with the witness list). This characterization is both unwarranted and unfair, absent a trial court inquiry, findings, and conclusions regarding Mr. Foster's conduct.

This court is quick to point out the inquiries not pursued and findings not made by either Judge Greene or Judge Beckwith regarding Mr. Wickwire's culpability. Not to be deterred by a record barren in this respect, the court then finds that Mr. Foster engaged in "equally unjustified—and evidently tactical—inaction" and concludes that he was correspondingly culpable in failing to contact Mr. Wickwire. It supports its conclusion by citing *City of Valdez v. Salomon*, 637 P.2d 298, 299 (Alaska 1981), and then comparing Mr. Foster's conduct to counsel's conduct found wanting in *Valdez*.

To me, this is a rather typical example of a case in which counsel who followed the rules, and tried to do the right thing, ends up being penalized because his opposing counsel did not follow the rules, and did not do the right thing.

The worst that can be said about Judge Greene's order is that it is ambiguous, though I suggest it brooks of no ambiguity. Judge Beckwith found no ambiguity in it and Mr. Wickwire detects none. To his credit, Mr. Wickwire understands that the obligation was his, not Mr. Foster's. On this record, I am unpersuaded that Judge Beckwith abused her discretion.

This court's disposition will require a second trial. I suggest that the appropriate disposition is to affirm the trial court. However, if this court is plagued by a nagging suspicion that Mr. Foster engaged in "equally unjustified—and evidently tactical—inaction" to gain an advantage, I suggest it would be more appropriate to remand this case to the trial court to review, and to make factual determinations regarding Mr. Wickwire's "complete absorption," forgetfulness, willfulness, the degree of his culpability, the degree of Mr. Foster's culpability, the suitability of alternative sanctions, and like matters.